UNITED STATES of America, Plaintiff,

v.

Ramon Dionicio MARTINEZ,
et al., Defendants.

Crim. No. 89–175.

United States District Court,
S.D. Texas,
Houston Division.

July 28, 1995.

Charles Lewis, Asst. U.S. Atty., Houston, TX, for plaintiff.

Robert J. Fickman, Houston, TX, for defendants.

OPINION ON STRIKING ALEMAN AS A WITNESS

HUGHES, District Judge.

1. *Introduction.*

■ The government has refused to deliver to the defendant a copy of a witness's statement against him. The witness is a co-defendant. Because it is the actual character of the document, rather than its bureaucratic form, that controls the government's duty of disclosure, it must be shown to the defendant. After a brief *ex parte* examination, the document's nature as purely the statement of the witness is obvious.

Because the government has refused to obey the order to disclose, the witness will not be allowed to testify. This dispute was resolved in advance of the trial so that the government could have an opportunity to seek review.

2. *The Rule.*

The government is obliged to show the defendant the statement of a witness against him. The statute describes what must be disclosed as a statement made by the witness and signed or otherwise adopted by him or a virtual verbatim recital of an oral statement recorded contemporaneously. The Jencks Act, 18 U.S.C. § 3500(e)(1) & (2).

### 3. *The Refusal.*

The government bases its refusal to comply with the court order on its wholly internal, subjective appraisal of the document as a law enforcement investigative report rather than a witness statement. The sheet of paper on which the data has been typed is labeled "Report of Investigation." That, according to the government, is that.

The defendant, of course, has no idea what the court and government are talking about since he only has access to what he has read in this opinion.

### 4. *The Racket.*

The case to be tried has charges of racketeering and drug conspiracy against 31 defendants. All of them except William Glenn Mitchell have pleaded guilty or will be tried separately. The criminal activities that are charged are multi-defendant, multi-state crimes ranging from the middle '70s to the early '90s. Despite the complexity and antiquity of the operative and investigative events, the government has represented that, apart from this document, it has taken no statement from its major cooperating co-conspiring witness. None.

### 5. *The "Report."*

■ The document that the government refuses to produce is typed on twelve sheets of paper printed with a heading, signature, and other procedural blanks; it is a DEA Form 6, with the printed title of "Report of Investigation." The government says that if the agent were actually to have taken a statement from the witness, he would have used a blank sheet of paper and typed "Witness Statement" at the top. The document was prepared by agent Espinoza from his notes of interviews of Aurelia Aleman, the cooperating co-defendant. Espinoza along with other agents interrogated Aleman. Espinoza recorded the witness's statements in rough notes (as they are called in police trade). After he transmuted his notes into the report, he destroyed the notes. Parenthetically, the notes might have been a statement themselves, which means that they should not have been destroyed. The interviews were held on three days in late 1990,

and the document is dated January 2, 1991. Its subject is "Debriefing of Aurelia Aleman."

The three principal sections of the text are called: synopsis, details, and indexing. Only the fifty-five paragraphs of details must be disclosed. The synopsis is a one-paragraph summary, and the indexing is cross-references to other reports, people, and crimes.

In the details section, paragraph one simply gives the dates of the interviews, and paragraph fifty-five says only that the investigation continues.

Paragraphs two through fifty-four are Espinoza's recording of Aleman's statements to him. Of fifty-three paragraphs, thirty-eight begin "Aleman stated...." Nine others begin saying that Aleman "described," "advised," or "recalls." Five paragraphs start by saying Aleman "met," "delivered," "arrived," or similar things. When a paragraph has more than one sentence, the other sentences begin in the same fashion.

No part of the document records an agents analysis, synthesis, interpretation, coordination, evaluation, or even reorganization. Nothing in the document is agent derived. Aleman's statements are simply recorded in the sequence he said them. On the third day, Aleman amended an earlier statement in the interviews. The agent simply recorded the amendment at the point in the sequence that Aleman spoke. There was no arrangement by the agent, like inserting the new material back with the old.

No part of the report includes the agent's reflection on the information he had received from the witness. He drew no conclusion, revealed no theory, recorded no impression. The agent was a surrogate stenographer.

### 6. *The Reality.*

■ The government insists that its statutory duty vanishes when the agent uses one piece of paper rather than another to record what someone tells him. While truth is often elusive, it is not purely subjective. The government cannot change the nature and function of a statement by calling it something else. Prosecutors may call pigs fish, but it is not so. The law does not address delusions

or pretensions; as it best can, it assesses reality. The plain reality of this document is that it is a statement of the witness disguised as an agent's report to cheat the defendant of his meager opportunity to confront his accusers.

### 7. *The Reason.*

There have been numerous agents working on the case, and several are preparing it for trial. The witness was interviewed for three days in late 1990. He was interviewed by at least two agents at all times. The agents that the government will call as witnesses are those who were present at the interrogations but who did not report the information; making it unavailable after they testify.

One does not have to be paranoid to wonder why the government has taken no statement from its key witness who was interviewed four years ago in a case about a complex fifteen–year criminal conspiracy. What could have motivated the agents to have the interviews with witnesses recorded in the form of an agent's "report" rather than as a "statement"? Evasion of the government's duty to disclose witness statements is the only plausible purpose for the use of one government blank rather than another or for the use of the third person rather than first person in the transcription. How does it happen that of all of the agents in the case, the one who "reports" the interviews is one the government chooses not to call?

### 8. *The Result.*

■ The result of this disingenuous sidetrack, besides wasting judicial and prosecutorial public resources, is that the witness may not testify. The government agents are not empowered to do a difficult job; they are allowed to do it, if they can, under the law. The agents are burdened by their oaths to obey the law, and that burden is not discharged by adolescent sophistries or bureaucratic shell games. U.S. Const. art. VI, ¶ 3.